**[Cite as *State v. Laughlin*, 2026-Ohio-3052.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

State of Ohio

  Appellee

v.

Corey Laughlin

  Appellant

Court of Appeals No. {22}E-26-001

Trial Court No. TRD2503111

**<u>DECISION AND JUDGMENT</u>**

Decided: August 7, 2026

* * * * *

Kevin J. Baxter, Erie County Prosecuting Attorney, and
Kristin R. Palmer, Assistant Prosecuting Attorney, for appellee.

Loretta Riddle, for appellant.

* * * * *

**OSOWIK, P.J.**

{¶ 1} Appellant, Corey Laughlin, appeals the judgment of the Erie County Municipal Court, following a bench trial, which found him guilty of speeding. For the reasons that follow, the trial court's judgment is affirmed.

## I. Statement of the Case and Facts

{¶ 2} Laughlin was cited for speeding on Route 250 near Scheid Rd. in Erie Township, Erie County, Ohio. More specifically, he was cited for operating his Dodge RAM at a speed of 84 MPH in a 55MPH zone, in violation of R.C. 4511.21D1, at or

around 6:53 p.m. on July 26, 2025.  Laughlin plead not guilty and the case proceeded to a bench trial on December 3, 2025.

<em>Testimony</em>

<em>Erie County Sheriff Deputy Josh Miller</em>

**{¶ 3}** The State first called Erie County Deputy Sheriff Josh Miller. Miller was on duty in uniform in a marked patrol car on July 26, 2025, around 6:50 p.m., on U.S. 250 in Huron Township, Erie County. He received radio information from Sgt. Szakats about a dark gray pickup traveling northbound at a high rate of speed. Miller did not observe the initial speeding violation himself. He saw a gray or silver pickup with dark tinted windows among a group of vehicles near Kalahari, initiated a stop, and identified the driver as Corey Laughlin. He stated no other vehicles in the area matched the sergeant's description at the time of the stop.

**{¶ 4}** Miller's body camera was activated after the call; his dash cam activates upon initiating lights. He recalled Laughlin and a passenger disputing that they were speeding. He affirmed the vehicle had heavily tinted windows and dark grille accents and that no other similar vehicles passed his location between 6:53 and 6:55 or turned on/off Route 250 during his observation. He confirmed this was the first Ram he encountered after being asked to locate the vehicle.

<em>Erie County Deputy Sargeant Brett Szakats</em>

**{¶ 5}** The next and final witness called by the State was Erie County Deputy Sargeant Brett Szakats. Szakats, an Erie County Sheriff's sergeant since 2013 with OPOTA certification, was on night shift duty on July 26, 2025.At approximately 6:53 p.m. on U.S. 250 between Huron Avery and Scheid Roads, he observed a pickup

2.

traveling at a high rate of speed in a 55-mph zone. His cruiser had a BEE III radar; the court took judicial notice of its reliability, and he is trained, certified, and performs daily tuning fork calibrations within tolerance. Operating in stationary mode, he obtained a radar reading of 84 mph with a high-pitched tone and testified no traffic interfered with that specific reading.

{¶ 6} Because of heavy traffic he could not safely pull out, so he radioed Deputy Miller to locate and stop the vehicle. He described the vehicle by radio as a gray pickup with blacked-out or dark windows and later confirmed the stopped vehicle was the same one he observed. He stated there were no other vehicles in the area matching that description and that Laughlin denied speeding when contacted. On cross, he agreed color description could be subjective between gray and silver and acknowledged he lost sight of the vehicle while merging into traffic. He estimated roughly two miles to the stop location, with Kalahari between, and said two intersections were along that stretch. He affirmed other traffic was present when the truck passed but maintained the speeding vehicle stood out relative to traffic flow and believed it was in the left lane.

{¶ 7} He also recalled Laughlin mentioning his daughter's Life360 speed data but did not review it. He agreed he said "nearly 90" on radio as an estimate and that his log reflected a radar range of 80–84 mph, which he attributed to acceleration. Dash cam video from his cruiser showed him traveling toward the stop, and he estimated about a minute from callout to Miller's stop and roughly two minutes for him to arrive. On redirect, he noted cloudy conditions that could diminish visibility but said he could

3.

clearly see intersections and did not observe any similar vehicles entering or exiting Route 250 before the stop.

*Appellant-Corey Laughlin*

{¶ 8} Corey Laughlin admitted he was the driver and owner of the stopped Dodge Ram. He testified his truck color is silver metallic and offered two photos, one of his silver Ram and one of a dark gray Ram, taken the same day in the courthouse lot. He identified the other Ram's color as granite metallic and stated both vehicles appeared the same model aside from color. On cross, he confirmed his front windows had additional non-factory tint and that his vehicle is a Night Edition with black accents. On recross, he stated his back windows are factory tinted, while the front door windows and windshield strip are aftermarket and darker than factory.

## II. Assignment of Error

{¶ 9} In his sole assignment of error, Lauglin argues that his conviction for speeding was not supported by a sufficiency of the evidence and was against the manifest weight of the evidence.

{¶ 10} As an initial matter, we will note appellee's observation that Laughlin did not make a Crim.R. 29 motion for acquittal after the State rested its case or after the defense rested its case. However, the Supreme Court of Ohio has held that the failure to object at trial to the insufficiency of the evidence does not waive a defendant's right to raise the challenge on appeal. *State v. Jones*, 91 Ohio St.3d 335, 346 (2001); *State v. Carter*, 64 Ohio St.3d 218, 223 (1992). *State v. Messer,* 2017-Ohio-1223, ¶ 16 (6th Dist.). In either event, appellant did present an insufficiency of the evidence argument to the trial court in closing argument.

4.

{¶ 11} Appellant argues the State failed to prove identity because Sergeant Szakats never saw the driver, did not obtain a license plate or state identifier, and lost sight of the truck in heavy traffic. He further contends the color and description evidence was unreliable, noting the sergeant's shifting descriptions from black to dark gray and insistence that gray and silver are "subjective."

{¶ 12} Appellant also asserts Deputy Miller's testimony that dash cam could misrepresent dark gray as silver was unreasonable, further undermining reliable identification of the truck. He argues the speed proof was insufficient because the sergeant gave inconsistent speed statements, reporting "nearly 90" and later "80 to 84," and could not rule out interference from other traffic. Laughlin further maintains the sergeant admitted he could not be sure other traffic did not affect the radar reading, which prevents proof beyond a reasonable doubt.

{¶ 13} Appellant emphasizes the defense offered evidence showing the truck was metallic silver, which contrasted with the sergeant's "dark gray" identification, creating reasonable doubt on identity. Laughlin argues that without a confirmed speed, driver identification, or plate information, the State presented only a generic description of a common truck and hence, no rational factfinder could find all essential elements proven beyond a reasonable doubt.

Laughlin's conviction is supported by sufficient evidence.

{¶ 14} This court's review of the sufficiency of the evidence presents a legal issue that we review de novo. *State v. Dent*, 2020-Ohio-6670, ¶ 15. When reviewing whether

5.

sufficient evidence exists to support a conviction, the question is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Bissell,* 2026-Ohio-1965 {¶ 14}.

{¶ 15} The State charged Laughlin with speeding under R.C. 4511.21(D)(1) which provides that no person shall operate a motor vehicle upon a street or highway at a speed exceeding fifty-five miles per hour, except upon a two-lane state route as provided in division (B)(10) and upon highways, expressways, or freeways as provided in divisions (B)(12), (13), (14), and (16),

{¶ 16} The evidence adduced at trial established that a highly trained and experienced sergeant with the Erie County Sheriff's office observed appellant's vehicle traveling at a high rate of speed in a 55-mile-per-hour zone.

{¶ 17} The testimony of the officer's training and experience and use of the police radar equipment was admitted without any objection. The officer testified that his radar unit registered a speed of 84 mph and that at the time he observed appellant's vehicle, there was no other traffic that might have interfered with the radar. The unit emitted a high-pitched tone when appellant's vehicle passed. Sergeant Szakats visually observed the pick-up truck. He described it as "gray, a gray pickup truck, a gray vehicle, something to that effect." Laughlin described his vehicle as "silver metallic."

{¶ 18} Appellant's primary factual challenge in this appeal is that the officer misidentified the color of the vehicle stopped. Laughlin submitted pictures to the trial

6.

court in an attempt to demonstrate the difference in "metallic silver" and a "granite" color on a Dodge Ram.

{¶ 19} Nevertheless, Laughlin admitted that he was operating his vehicle on State Route 250 when he was pulled over by Officer Miller.

{¶ 20} Appellant's claim of insufficiency of evidence is a challenging endeavor under the facts of this case. Laughlin must show not merely that the officer described the vehicle's color inaccurately, but that this inaccuracy affirmatively demonstrates the wrong vehicle was stopped. And further, that no reasonable factfinder could have credited the officer's testimony.

{¶ 21} Sargeant Szakats affirmed other traffic was present when the truck passed but maintained the speeding vehicle stood out relative to traffic flow and believed it was in the left lane. He described the vehicle by radio as a gray pickup with blacked-out or dark windows and later confirmed the stopped vehicle was the same one he observed. He stated there were no other vehicles in the area matching that description.

{¶ 22} Deputy Miller also testified that he saw a gray or silver pickup with dark tinted windows among a group of vehicles near Kalahari and initiated a stop. He stated no other vehicles in the area matched the sergeant's description at the time of the stop. Laughlin admitted he was operating his Dodge Ram on Route 250 when he was stopped. The color discrepancy asserted by him in this instance is immaterial. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a

7.

reasonable doubt. *State v. Hall*, 2026-Ohio-2020, ¶ 32-33 (6th Dist.). In making that determination, the appellate court will not weigh the evidence or assess the credibility of the witnesses. *State v. Pontious*, 2026-Ohio-1367, ¶ 44 (6th Dist.).

{¶ 23} Here, the evidence presented at trial showed that Laughlin was the operator of his Dodge Ram on State Route 250 exceeding the posted 55 mph speed limit which is sufficient to support his for speeding and in violation of R.C. 4511.21(D)(1) beyond a reasonable doubt.

Laughlin's conviction is not against the manifest weight of the evidence.

{¶ 24} Finally, Laughlin argues that his conviction is against the manifest weight of the evidence because neither Sergeant Szakats nor Deputy Miller were credible concerning the color of the truck. Appellant also argues that Sergeant Szakats was not credible because he "couldn't state a specific rate of speed nor affirmatively state that the other traffic didn't interfere with the reading.

{¶ 25} However, contrary to these assertions, Sergeant Szakats testified as follows:

Q    What, if any, speed did you observe on the radar    unit
     that indicated to you the Defendant was committing a
     traffic violation?

A    I believe it was 84 in a 55.

{¶ 26} Further, he also testified as follows:

8.

Q  All right. What, if any, other traffic might have

inferred – interfered with the radar reading of the

Defendant's vehicle?

A  There – there was none at that point.

{¶ 27} Laughlin claims that the trial court lost its way in convicting Laughlin.

{¶ 28} A manifest weight of the evidence challenge looks to whether the state met its burden of persuasion. *State v. Reillo,* 2026-Ohio-2701, ¶ 24. Weight of the evidence concerns:

> the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief.*

*Id.* at ¶ 25, citing *State v. Thompkins,* 78 Ohio St.3d 380 (1997) (emphasis in original). "Accordingly, under a manifest-weight review, a court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.* at ¶ 26, citing *State v. Brown,* 2025-Ohio-2804, ¶ 30. "Appellate courts may vacate a jury's verdict and order a new trial only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.* at ¶ 27.

9.

{¶ 29} "[I]n weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 28, citing *Eastley v. Volkman,* 2012-Ohio-2179, ¶ 21. "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." *Id.,* citing *In re. Z.C.,* 2023-Ohio-4703, ¶ 14. An appellate court only disregards that presumption "when evidence contradicts a fact-finder's findings" or "when a witnesses' testimony is so inconsistent as to material facts, so impeached, or so fantastical as to make it patently unbelievable." *Id.* at ¶ 3. In those instances, the reviewing court sits at a "thirteenth juror who may disagree with the fact-finder's resolution of the conflicting evidence." *Id.* at ¶ 27.

{¶ 30} After carefully reviewing the record, we are not convinced that the evidence contradicts the trial court's findings or that any witnesses' testimony was so inconsistent, so impeached, or so fantastical to render it patently unbelievable. As a result, we are bound to give the evidence the interpretation that is most favorable to sustaining the verdict. *Id.* at ¶ 14. That is, the trial court found that "the testimony was pretty clear that it was the same truck that he was looking for." We cannot say that the trial court lost its way or created a manifest miscarriage of justice by believing the testimony of the officers. We find, therefore, that Laughlin's conviction is not against the manifest weight of the evidence. Thus, his sole assignment error is not well-taken.

10.

## III. Conclusion

{¶ 31} For the foregoing reasons, the judgment of the Erie County Municipal Court is affirmed. Laughlin is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.

Thomas J. Osowik, P.J.

_____
JUDGE

Gene A. Zmuda, J.

_____

Charles E. Sulek, J.
CONCUR.

JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.